NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
**ALEX TSAKONAS**,                              :
:      Civil Action No.  04-cv-1363 (PGS)
Plaintiff,               :
:
V.                               :
:
**NEXTEL COMMUNICATIONS, INC.,** :
**FRANK ZUZZI, ROBERT HEARN**    :       OPINION
**AND JERRY REYNOLDS**           :
:
Defendants.             :
_____:

**SHERIDAN,  U.S.D.J.**

      This matter comes before this Court on a motion for summary judgment on all counts of the Complaint, claiming that plaintiff cannot establish, as a matter of law, that his termination and denial of promotions were motivated by plaintiff's age or disability.

I.

      Plaintiff, Alex Tsakonas, born August 5, 1943, began his employment as a Nextel Sales Manager in the New York/New Jersey region in the General Business Division in 1994, under the direct supervision of Defendant Frank Zuzzi, Director of Sales.  Defendant Robert Hearn, Zuzzi's supervisor, was employed as Vice President of Direct Sales from August 1998 through June 2003, at which time he became Vice President of Corporate Accounts.  Defendant Jerry Reynolds, Hearn's supervisor, was employed as Vice President of the New York area at all relevant times.

      As a sales manager, the plaintiff was allotted a sales team and assigned a sales quota, which

1

was established by Nextel's upper management. Plaintiff's performance as a sales manager was measured, in part, by his success in getting his sales team to meet 100% of its quota. From 1994 through 2001, plaintiff earned exemplary performance reviews and was recognized as a member of the "President's Club" on two occasions because he exceeded his sales quotas.

In 2001, plaintiff's evaluation changed. He failed to reach his gross or net quotas commencing in that year. In his performance evaluation for 2001, Zuzzi, plaintiff's superior, issued a performance rating of "Needs Development" in several key areas. In March 2002, Zuzzi formulated an Action Plan to assist plaintiff in improving his performance. The Action Plan instructed plaintiff to hold meetings with his sales team in order to develop sales techniques and to coach his sales team on developing forecasts. In addition, he was instructed to make customer calls with any poor performing sales representatives at least twice per week. Despite the Action Plan, plaintiff's performance did not improve. Plaintiff achieved 81% of his sales quota for 2002. Plaintiff's overall evaluation for 2002 was rated as "Needs Development." In light of his performance, Zuzzi and Hearn recommended a small salary increase for the plaintiff. Reynolds, however, chose not follow their recommendation and denied the plaintiff any salary increase for 2002.

Plaintiff was placed on a Performance Improvement Plan (PIP) on February 26, 2003. According to defendants, a sales employee may be placed on a PIP if he or she fails to achieve an average of 80% of his or her sales quota for three consecutive months. In light of plaintiff's failure to reach 80% of his quota for December 2002, January 2003, and February 2003, plaintiff was placed on a PIP by which monthly sales quotas were reduced to assist the plaintiff in reaching his sales goals. Under the PIP, plaintiff was required to reach 80% of his sales quota for March, 90% of his

sales quota for April, and 100% of his sales quota for May. These requirements, according to defendant, were standard for all employees placed on PIPs. Plaintiff understood that if he failed to meet the requirements of his PIP, his employment could be terminated.

While plaintiff met his requirements for March, plaintiff failed to attain the requisite sales for April or May of 2003. In the beginning of June, plaintiff took two weeks of vacation followed by a leave of absence pursuant to the Family and Medical Leave Act (FMLA) relating to his prostate cancer, of which plaintiff initially advised defendants in the late fall of 2002. Plaintiff would not return from leave until September 16, 2003. According to defendants, it was only during the plaintiff's leave of absence that Zuzzi discovered plaintiff had failed to reach his quotas for April and May. Plaintiff returned to work on September 16, 2003 and was terminated a week later. The decision to terminate was made by Zuzzi and approved by Reynolds.

## II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an

4

essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

III.

Pursuant to the FMLA, an employee is entitled to take a leave of absence of up to twelve weeks during any one year period for a serious illness, and the employer must then reinstate the employee in the same or a reasonably comparable position. See 29 U.S.C. § 2614(a)(1)(A) and (B). Plaintiff contends his firing was in retaliation for having taken leave under FMLA. *Holpp v. Integrated Communications Corp.*, 2005 U.S. Dist. Lexis 35557 (2005)(unpublished) (citing See 29 U.S.C. § 2615(a)(1) and (2); 29 C.F.R. § 825.220( c); *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 n.9 (3d Cir. 2004)); see also *Sommer v. The Vanguard Group*, 380 F. Supp. 2d 680 (E.D. Pa. 2005).

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that (1) he or she took an FMLA leave, (2) he or she suffered an adverse employment decision, and (3) the adverse decision was causally related to his or her leave. *Conoshenti v. PSE&G Co.*, 364 F.3d 135 (3d. Cir. 2004). Once a plaintiff makes out a prima facie case, the *McDonnell Douglas* burden shifting framework is implicated. See *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *Weston v. Pennsylvania*, 251 F.3d 420, 432 (3d. Cir. 2001). That is, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. See *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089 (1981); *McDonnell Douglas*, supra. If the defendant meets this burden, the plaintiff must then prove that the defendant's reason was a pretext for a discriminatory motive. *Burdine*, 450 U.S. at 254.

To support their motion, defendants maintain that the plaintiff was fired on account of poor work performance, namely the plaintiff's inability to meet the quotas set forth in the plaintiff's PIP for the months of April and May.  According to defendants, the decision to terminate the plaintiff was made upon realization that plaintiff failed to meet his quotas, which was not until sometime in June 2003, at which time plaintiff was already on leave.  However, rather than terminate the plaintiff while on leave, the defendants waited until plaintiff returned from leave and then terminated his employment.[1]

Plaintiff counters that the temporal proximity between his return from leave and termination is a link sufficient to establish a prima facie case.  Plaintiff also proffers that defendants had previously taken adverse action against at least two other employees who had gone on leave.  Other employees have stated that taking medical leave at Nextel was "the kiss of death."  These stark factual contrasts preclude entry of summary judgment. See *Celotex Corp. v. Catrett*, 477 U.S. 317. Motion for summary judgment on Count I of the Complaint is denied.

IV.

The remainder of plaintiff's complaints are premised on the New Jersey Law Against Discrimination (NJLAD).  *N.J.S.A.* 10:5-1 et seq.  To prove a prima facie case of discrimination, a plaintiff must show that he or she (1) belongs to a protected class; (2) held a position for which he was objectively qualified; (3) was terminated from that position; and that (4) the employer sought to, or did fill the position with a similarly qualified person.  The establishment of a prima facie case gives rise to a presumption of discrimination.  *Viscik v. Fowler Equip. Co.*, 173 N.J. 1 (2002).  As

---

[1] At oral argument, plaintiff alleges about a week before his return, Zuzzi advised him that he should apply for other similar jobs within Nextel; but did not state any reason.

with FMLA, analysis under NJLAD requires a burden shifting procedure. *Viscik*, 173 N.J. at 14. *See, also, McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Defendants concede, for the purposes of this motion that plaintiff's illness constitutes a disability under the Act, and that plaintiff has established a prima facie case of age and disability discrimination under NJLAD.

Therefore, the Court's analysis starts from this point, whereby the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.[2] Defendants cite plaintiff's poor performance dating back 2 ½ years before he was placed on a PIP and discharged. To support this argument defendants point to plaintiff's performance evaluations for 2001 and 2002, the 2002 Action Plan, and the February 26, 2003 PIP. Plaintiff was unable to reach his quotas or requirements under the PIP, leading to his dismissal.

Accordingly, the burden of production is shifted back to the plaintiff to show that the reasons suggested by defendants were merely a pretext for discrimination. Evidence of pretext sufficient to permit the employee to reach a jury may be indirect, *Burdine*, supra, 450 U.S. at 255-56, such as a demonstration "that similarly situated employees were not treated equally." *Id.* at 258. The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253-54.

Plaintiff points to other employees who experienced similar issues in meeting sales quotas,

---

[2]Although age is specifically recognized within the framework of NJLAD, plaintiff's disability (prostate cancer) is another story. See *Cinelli v. U.S. Energy Partners*, 77 F. Supp. 2d 566, 574-75 (D.N.J. 1999)(cancer is not a "per se" disability and whether cancer as a disability falls within the NJLAD depends on whether the employer regarded the plaintiff's cancer as substantially limiting plaintiff's ability to work).

but were not dismissed, including Andrew Galinsky (claimed by plaintiff to be in his 30s), and John Lyons (claimed by plaintiff to be approximately 40 years old). Plaintiff lists the following as evidence of pretext: (1) Zuzzi allowed the loss of members of the sales team to be a mitigating factor in the evaluation of Chris Ciccia, another sales manager, while disallowing a similar concession for the plaintiff who had lost two salespeople including a President's Counsel candidate; (2) Ciccia and Galinsky received a 3% raise in April 2003 while plaintiff received no raise, even though their sales performance was similar to plaintiff's (with plaintiff exceeding their performance in at least two months); (3) although Galinsky and Lyons failed to achieve an average of 80% of their sales quotas for 3 consecutive months, they were not placed on a PIP like the plaintiff; (4) in the first 5 months of 2003, plaintiff's percentage exceeded Galinsky's in every month except March and while plaintiff was terminated, Galinsky was not; (5) Donna Ricci, a former member of Zuzzi's team, placed on a PIP in July 2000 and considered the worst performer in 2001 according to Zuzzi, remained in Nextel's employ until April 2002; and (6) Zuzzi referred to the plaintiff as a "dinosaur".

     Defendants contend that this claim should be narrowly evaluated by only reviewing the actions of Mr. Zuzzi and his treatment of sales managers. Of the three sales managers under Zuzzi's supervision, only one, Robert Lane (age 45) was meeting his sales quota. The other sales manager, Ciccia (age 35), like plaintiff, was placed on a PIP. Ciccia was discharged one month into his PIP after failing to reach his quota. Defendants also point to Ricci, a member of Zuzzi's sales team prior to 2003. Ricci, who was, according to the defendants, younger and not disabled, was also placed on a PIP and ultimately discharged for failing to achieve the requirements of her PIP (Plaintiff challenges this assertion and claims that Ricci left voluntarily; however, the record submitted is unclear.) Accordingly, defendants argue that there is no discriminatory action.

8

Further, at oral argument, there appears to be a factual dispute as to the role of "quota relief" in employment assessment at Nextel.  Defendants argue that a manager may avail himself to quota relief for purposes of calculating bonuses; but it is not a factor in determining overall job performance.  Plaintiff disputes same. In short, there is sufficient evidence of pretext to withstand a motion for summary judgment.

V.

Plaintiff further claims he was denied promotions due to his age.  As an initial starting point, the statute of limitations for claims arising under the NJLAD is two years.  *Montells v. Haynes*, 133 N.J. 282 (1993).  It appears that plaintiff's claim regarding the Government and Major Account's position, for which plaintiff maintains he was passed over in 2000, is time barred under the applicable statute of limitations.  *Id.*; *N.J.S.A.* 2A:14-2.[3]  All claims in connection with positions denied to the plaintiff prior to March 23, 2002 are barred by the statute of limitations. *N.J.S.A.* 2A:14-2.

Nextel hired an individual named Phil Foti for some management position.  Plaintiff argues Mr. Foti was "much younger" than him.  However,  "a court's role is not to second-guess an employer's business judgment to who is more qualified for the job." *Reap v. Continental Casualty Co.*, 2002 U.S. Dist. LEXIS 13845, *55 (D.N.J. 2002).  At the pretext stage of the analysis, an employee's own conclusory statements regarding his qualifications in relation to a competitor's qualifications are insufficient to defeat summary judgment. *Id.* (citing *Pepe v. Rival Co.*, 85 F. Supp.

---

[3] There is mention in the Complaint of plaintiff being denied the position of Branch Manager; but it is insufficiently pled, and plaintiff does not appear to brief it.  It is dismissed with prejudice.

2d 349, 379 (D.N.J. 1999), aff'd, 254 F.3d 1078 (3d Cir. 2001)). "[M]ore than a denial of a promotion as a result of a dispute over qualifications must be shown to prove pretext." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F. 2d 509, 523 (3d. Cir. 1992), cert. denied, 510 U.S. 826 (1993). The plaintiff has not presented any evidence from which a fact finder could reasonably conclude that an illegitimate factor was the determinative cause of the decision to hire Foti and not promote the plaintiff.

Similarly, plaintiff was overlooked for the position of Sales Manager for Corporate/Major/Government accounts. But on closer examination, the position was never filled. In light of same, Plaintiff cannot establish a prima facie case on account of his failure to satisfy the fourth element that the employer sought to, or did fill the position with a similarly qualified person.

There are several positions which plaintiff alleges he was denied due to his age; but plaintiff did not apply for these positions. More specifically the positions include senior sales manager, government sales manager and sales manager of the general business division. It is clear plaintiff "would have to apply for the position in order to establish a prima facie failure to promote claim." *Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 376 (D.N.J. 1999) (citing *Bermingham v. Sony Corp. of America, Inc.*, 820 F. Supp. 834, 854-55 (D.N.J. 1992), aff'd without op'n, 37 F.3d 1485 (3d Cir. 1994)). Plaintiff argues that he generally made his intent known that he wished to be promoted. This vague generality is insufficient to withstand the motion. *Kovoor v. Sch. Dist.*, 211 F. Supp. 2d 614, 625 (E.D. Pa. 2002). Accordingly, all claims for failure to promote are dismissed.

V.

Defendants maintains that the individual defendants should be dismissed from the case as a matter of law. That is, Zuzzi, Hearn and Reynolds were the alleged principal decision-makers, and thus cannot be liable for aiding and abetting their own conduct. Plaintiff claims that Zuzzi aided

and abetted Nextel's discriminatory acts by placing him on a PIP, denying his request for quota relief, and ultimately deciding to terminate him.  Hearn, allegedly, approved all of those decisions, other than the decision to terminate.  And, Reynolds made the decision to deny the plaintiff a raise for 2002.

It is well settled, a "principal wrongdoer, cannot aid and abet his own wrongful conduct." *Newsome v. Administrative Office of the Courts*, 103 F. Supp. 2d 807, 823 (D.N.J. 2000) (citing *Hurley*, 174 F.3d at 126).  Plaintiff's own pleadings defeat this claim.  In several counts, plaintiff maintains that either "Zuzzi and Reynolds made the relevant decision" or "Zuzzi, Hearn and Reynolds made the relevant decision" which suggests that they were the principal wrongdoers in relation to the conduct referenced in those counts.  Since the individuals were the decision makers, it is difficult to categorize them other than the "principal wrongdoers."  Accordingly, the claim against Zuzzi, Reynolds and Hearn are dismissed.

VI.

The motion for summary judgment with regard to Counts I, II, and IV are Denied and Counts III, V and VI, as well as all claims against the individual defendants are Granted for the reasons set forth above.

August 31, 2006                                    S/ *Peter G. Sheridan*
                                                   PETER G. SHERIDAN, U.S.D.J.